## AMERICAN SECURITIES CO. et al. v. WILKINS.

Circuit Court of Appeals, Fifth Circuit.
April 4, 1929.

No. 5470.

T. J. Shackelford, Max Michael, and Lamar C. Rucker, all of Athens, Ga. (Shackelford & Shackelford and Green & Michael, all of Athens, Ga., on the brief), for appellants.

Wm. Hart Sibley, of Atlanta, Ga., and Wolver M. Smith, Henry C. Tuck, Horace M. Holden, and John B. Gamble, all of Athens, Ga., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. The American State Bank of Athens, Ga., was taken over by the state superintendent of banks for liquidation. Under the Georgia law an assessment was made against John J. Wilkins as a stockholder; execution was issued against him and levied on 996 shares of stock of the Belgrade Manufacturing Company. All of the assets of the bank, including this assessment, were transferred to the American Securities Company.

Appellee Mrs. Jessie Horton Wilkins, the wife of John J. Wilkins, brought suit against the American Securities Company, its president, and its secretary, against the Belgrade Manufacturing Company, and H. C. Camp, sheriff of Barrow county, to restrain further proceedings under the fi. fa.; she alleging that her husband was indebted to her in the sum of $83,291.51, and that the said 996 shares of stock had been indorsed and delivered to her as security for the debt, prior to May 29, 1926, the date execution was levied.

The Maryland Trust Company and the Misses Maude and Frances Cheney brought suits against John J. Wilkins and his wife, alleging a conspiracy to put his assets beyond the reach of his creditors, and also sought to seize the said stock. Mrs. Wilkins by an amended bill brought in these parties, alleging that their suit constituted a cloud on her title to the stock.

After issue joined by all parties, the case was referred by the court ex proprio motu to Hon. J. M. Talley as special master, to take the evidence and report his findings of fact and conclusions of law. The master heard the witnesses and in due course rendered a report.

It is impracticable, and it is unnecessary, to review the master's report in full. Briefly stated, the master found that, within a short time after her marriage in 1892, Mrs. Wilkins received as her distributive share of her father's and mother's estates approximately $9,000. On January 1, 1912, what she had received, through provident invest-

ments and efficient administration by her husband, with accretions and profits, had amounted to $35,000, and on that day her husband acknowledged his indebtedness to her in that amount and executed his promissory note, securing it by collaterals consisting of various shares of stock. Thereafter, from time to time, there were transactions between the spouses. Her husband made donations to Mrs. Wilkins at times when he was perfectly solvent, and at other times he borrowed money from her, giving his notes as evidence of the loans. There were exchanges of securities behind the notes and a constant appreciation in the separate property of Mrs. Wilkins. John J. Wilkins had nothing at the time of his marriage in 1892, but he was successful, and in 1922 he was solvent, had a net worth of $400,000 to $500,000, and an income of $30,000 to $50,000 yearly. He first got into financial difficulties in 1925, through the failure of a bank in which he was largely interested, and at that time his income practically ceased. Mrs. Wilkins endeavored to assist her husband. She permitted loans to be made on life insurance of which she was the beneficiary, and she borrowed some $10,000 from relatives, which she in turn loaned to her husband. In 1925 he borrowed an additional $32,500 from his wife, gave his note for that amount, and secured it by 500 shares of the stock in the Belgrade Manufacturing Company. He also substituted for other securities, which were taken out and sold, 496 shares of the same stock as security for the original note of $35,000.

The master reviewed all of the transactions between Mrs. Wilkins and her husband from 1892 up to the time the hearing was had, and made his report in great detail, going fully into every transaction between them, and struck an account showing that John J. Wilkins was indebted to his wife in the sum of $102,251.91, found that the stock in the Belgrade Manufacturing Company had been pledged to Mrs. Wilkins as collateral security for that debt, and recommended a decree quieting her title to same. Practically every finding of fact by the master was excepted to by appellants. The District Court considered the exceptions and entered a decree overruling all of them and confirming the report.

There would seem to be very little doubt, if any, that the transactions recited by the master in the course of his report actually occurred. Appellants contend that they were really transactions for the account and benefit of Wilkins, and not for his wife. It is their theory, apparently, that the claim of Mrs. Wilkins was intended as a fraud upon her husband's creditors, thought of and urged after the assessment had been levied.

There is evidence which tends to support the findings of the master, but it is urged that the testimony is only that of interested parties, Mrs. Wilkins, her husband, and her son. Of course, transactions between husband and wife, viewed in the light of the insolvency of the husband, are always open to suspicion; but the master had the witnesses before him, and was in the best position to decide as to their truthfulness and veracity and the probative value of their testimony. Although the evidence as to some of the earlier transactions is somewhat vague, and the testimony in some instances is contradictory, on the whole we must conclude that there was sufficient to support the master's findings.

In the case of Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289, the court said this, regarding the weight to be given the findings of a master: "As the case was referred by the court to a master to report, not the evidence merely, but the facts of the case, and his conclusions of law thereon, we think that his finding, so far as it involves questions of fact, is attended by a presumption of correctness similar to that in the case of a finding by a referee, the special verdict of a jury, the findings of a Circuit Court in a case tried by the court under Rev. Stat. § 649 [28 USCA § 773], or in an admiralty cause appealed to this court. In neither of these cases is the finding absolutely conclusive, as if there be no testimony tending to support it; but so far as it depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable."

We think the rule above announced is applicable to this case. The issues presented are purely of fact, and the case was one peculiarly for a master. The presumption in favor of the correctness of the master's report is strengthened by the approval of the District Court. On the record before us, we would not be warranted in reversing the decree.

Affirmed.